67 F.3d 294
 7 NDLR P 192
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carol J. DERBIS, Plaintiff-Appellant,
v.
UNITED STATES SHOE CORPORATION, Women's Speciality Retailing
Group, Defendant-Appellee.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Amicus Curiae.
 No. 94-2312.
 United States Court of Appeals, Fourth Circuit.
 Sept. 29, 1995.
 
 ARGUED: Alan Hilliard Legum, ALLAN HILLIARD LEGUM, P.A., Annapolis, Maryland, for Appellant. Paul D. Ramshaw,
 UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Burton John Fishman, TUCKER, FLYER & LEWIS, Washington, D.C., for Appellee. ON BRIEF: T. Bruce Godfrey, ALLAN HILLIARD LEGUM, P.A., Annapolis, Maryland, for Appellant. James R. Neely, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Kevin Patrick Reilly, TUCKER, FLYER & LEWIS, Washington, D.C., for Appellee.
 Before ERVIN, Chief Judge, and NIEMEYER and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Carol J. Derbis, an employee of the United States Shoe Corporation (U.S.Shoe), maintains that she was discharged on July 31, 1992, from her employment as manager of U.S. Shoe's Petite Sophisticate, a retail clothing store in Glen Burnie, Maryland, in violation of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. Sec. 12101 et seq. Derbis suffered a work-related injury to her right hand in 1989 when a clothing rack fell on her hand at the store. She sustained a 30 percent impairment to her hand as a result of the injury and subsequent surgery. While Derbis continued to perform well as store manager of Petite Sophisticate throughout 1991, in March 1992 she had to take leave from work because she suffered a severe kidney infection requiring surgery. Additionally, during the course of that leave, in June 1992, Derbis underwent a second operation on her injured right hand.
 
 
 2
 In early July 1992, Derbis notified U.S. Shoe's regional manager that she planned to return to work on August 1, 1992. U.S. Shoe's employment relations coordinator, Doris Ciampoli, wrote Derbis on July 17, stating that upon returning to work, Derbis will have to present the district manager with "a total release filled out by your doctor indicating that you are totally released to work or exactly what restrictions you may have." In response, Derbis provided her district manager with a return-to-work notice from her doctor which indicated that Derbis was disabled from work through August 1, 1992, and could return to work thereafter "as tolerated." In a subsequent conversation with Derbis, Ciampoli informed Derbis that the return-to-work slip did not constitute the complete release that was required for her return to work and that Derbis must obtain a complete release or identify the restrictions that needed accommodation. Ciampoli suggested to Derbis that if Derbis could not get a full release, she should apply for long-term disability. Because Derbis believed that she could perform her job without accommodation, she viewed this conversation as effectuating her discharge from Petite Sophisticate.
 
 
 3
 In her action alleging a violation of the ADA, Derbis contends that on July 31, 1992, U.S. Shoe terminated her employment as store manager and discharged her from employment "because of her disability, being an impairment of hand movement." She seeks a mandatory injunction for reinstatement and an award of back pay, together with reasonable attorneys fees.
 
 
 4
 Granting U.S. Shoe's motion for summary judgment, the district court found that Derbis had presented sufficient evidence to establish a disability but failed to submit evidence to support a finding that she was a "qualified individual" and therefore protected under the Act. See 42 U.S.C. Sec. 12111(8). The court found that her doctor's use of the word "as tolerated" in the return-to-work slip indicated that Derbis needed some type of accommodation. The court noted, "Plaintiff's contention that she needed no accommodation at all cannot be correct, as it is contradicted by Dr. Cooper's opinion." The court held that U.S. Shoe was justified in disregarding Derbis' declaration that she could perform her work without accommodation, and that therefore Derbis failed to submit sufficient evidence to support a finding that she was qualified.
 
 
 5
 On appeal Derbis continues to contend that she can perform the essential functions of her job without any accommodation from her employer. She argues that she did her job in an exemplary manner for the period from December 1990 to March 1992, before her illness and second operation, and that her ability to perform her job has not changed. She contends that she is a qualified individual with a disability because she can perform the essential functions of her job without the need for accommodation.
 
 
 6
 The company argues that the doctor's note stating that Derbis can return to work "as tolerated" indicates that Derbis can work only with some form of accommodation and that accommodation is dictated by Derbis' subjective determination as to when her pain allows her to work. The company notes, moreover, that Derbis needed assistance with her work during the 1991 period. The company argues that since Derbis refuses to discuss any accommodation, it has no further obligation under the ADA. If no accommodation is needed, the company maintains, then Derbis should be able to obtain an unqualified doctor's release to return to work. The company suggests that Derbis' refusal to obtain a complete release is motivated by Derbis' desire to preserve her right to worker's compensation benefits.
 
 
 7
 The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. Sec. 12112(a). The Act defines the term "discriminate" to include "not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. Sec. 12112(b)(5)(A).
 
 
 8
 The district court agreed with the company that Derbis is disabled and appears to need accommodation. Despite the position maintained on her behalf by counsel, the district court concluded,
 
 
 9
 [I]t is undisputed that Plaintiff simultaneously presented U.S. Shoe with a Return to Work slip from her doctor that plainly indicated that Plaintiff needed some accommodation.... In essence, Dr. Cooper's medical opinion contemplated that Plaintiff would have to stop working when the pain in her thumb became too great.... Thus, Plaintiff's contention that she needed no accommodation at all cannot be correct, as it is contradicted by Dr. Cooper's opinion, which Plaintiff herself provided to U.S. Shoe.
 
 
 10
 The district court explained further that during the argument on the motion for summary judgment, counsel for Derbis acknowledged that if Derbis' pain became too great, Derbis would be required to stop work pursuant to Dr. Cooper's instructions. As the court summarized, "Plaintiff's own doctor indicated that although Plaintiff could return to work, she would have to be permitted to stop working whenever her subjective level of pain toleration demanded."
 
 
 11
 The district court's position is further confirmed by other undisputed facts in the record. The injury to Derbis' right hand has apparently caused her a 30 percent loss of use of the hand. More importantly, when she experienced pain in the past, she found that she could not perform mechanical tasks that were part of her job, requiring her to delegate them to other employees. Two employees, with whom Derbis worked and who were generally supportive of her, stated to the same effect: "I recall that Ms. Derbis often complained about the pain in her hand and grew frustrated that she could not do everything. On occasions when the pain became too much to bear, Ms. Derbis would request that her employees complete certain writing tasks."
 
 
 12
 Derbis apparently is a good worker and has achieved success for the store that she managed. She is anxious to work and apparently can work with accommodation for pain and with the ability to transfer some of her writing functions to others. We do not know whether these accommodations are all that are necessary or whether they are reasonable, because Derbis has never sought any accommodation. For some strategic reason that her counsel was unable to explain to us during oral argument, Derbis has not sought a reasonable accommodation from her employer, maintaining stoutly and in contradiction of her condition that she can perform her job without accommodation.
 
 
 13
 We agree with the district court that if Derbis seeks no accommodation, the employer is justified in instructing Derbis not to return to work until she obtains a clean bill of health. If she wishes to work in her present condition, however, then she must seek a reasonable accommodation in order to implicate a duty imposed on her employer by the ADA.
 
 
 14
 In view of the open factual questions, we remand the case to the district court to determine if, in light of this opinion, Derbis seeks a reasonable accommodation. If she seeks a reasonable accommodation, then further proceedings are necessary; but if she maintains that no accommodation is necessary, then the district court may dismiss the case.
 
 AFFIRMED IN PART AND REMANDED